Filed 12/17/20  P. v. Smith CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>THOMAS SMITH,<br><br>     Defendant and Appellant. | B304081<br><br>(Los Angeles County<br>Super. Ct. No. BA476398) |

———————————

APPEAL from a judgment of the Superior Court of Los Angeles County, Mildred Escobedo, Judge.  Affirmed.

Andrea Keith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Thomas Smith attempted to steal a Rolls Royce from an auto body repair shop but was interrupted by police. He fled the scene in a stolen Honda and was apprehended after a dangerous vehicle pursuit. A jury found him guilty of attempted second degree robbery (Pen. Code., §§ 211, 664),[1] fleeing a pursuing peace officer's motor vehicle while driving recklessly (Veh. Code, § 2800.2), driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a)), and resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1)). He admitted a prior strike conviction within the meaning of the Three Strikes Law (§§ 667, subds. (b)-(j), 1170.12), and a prior serious felony conviction (§ 667, subd. (a)(1)). The trial court sentenced him to a total of 10 years and four months in state prison.

During trial, Smith's attorney unsuccessfully challenged two of the prosecutor's peremptory challenges under *Batson v. Kentucky* (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69] (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

On appeal, Smith challenges the trial court's denial of one of his two *Batson/Wheeler* motions. He also challenges the sufficiency of the evidence supporting his attempted robbery conviction. We affirm.

Substantial evidence supports the trial court's denial of Smith's *Batson/Wheeler* motion because the prosecutor's explanation was reasonable and race-neutral, and there is no evidence indicating it was a pretext for discrimination. Smith's challenge to the sufficiency of the evidence fails because he incorrectly asserts the People had to prove the victim was in sustained fear, which is not an element of attempted robbery.

---

[1] Subsequent undesignated citations are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

## A.     Factual Background

On March 22, 2019, Mouchegh Yeghikian, the owner of an auto body repair shop specializing in luxury cars, was working at his shop in Hollywood.  Yeghikian saw Smith sitting in a Honda Accord parked across the street outside his shop.  Smith remained in the Honda for about two hours.  During the time Smith was parked outside, Yeghikian moved a Rolls Royce from inside the shop to a location on the street, placing the keys in his pocket.  Later, while Yeghikian was assisting a customer, Smith suddenly appeared and asked Yeghikian for the keys to a Rolls Royce.  Thinking Smith was a customer, Yeghikian asked Smith for his name.  Smith replied, "Don't ask my name."  Yeghikian worried Smith was going to steal the car so he asked Smith to come with him to his office, hoping to "relax" him and avoid causing a disturbance in the shop.

Once in the office, Smith told Yeghikian, "don't play dumb with me, don't think I'm stupid, you know what I want."  Yeghikian tried to calm Smith down by offering him something to drink.  Smith put his hand in his shirt or his sweater in a manner that suggested to Yeghikian that Smith was reaching for a gun.  Yeghikian became increasingly worried for his safety and retrieved a gun himself.  At that point, Yeghikian heard sirens outside.

Smith and Yeghikian walked outside as police officers arrived.  Los Angeles Police Department Officer Lazaro Ortega ordered Smith to stop and raise his hands.  Smith did not comply.  Officer Ortega repeated the order and Smith still failed to comply.  Officer Ortega's partner drew her weapon, and Officer

3

Ortega fired his Taser at Smith. The Taser did not subdue Smith. Smith ran to the Honda, said "ha ha," and drove away.

Officer Ortega and his partner pursued Smith in their patrol car. Smith drove recklessly. At times he drove against traffic on the wrong side of the road, and at one point his speed reached 75 miles per hour down a residential street. The officers succeeded in stopping Smith when he pulled into the driveway of a business that had no exit.

Subsequent investigation revealed Smith had been driving a Honda Accord that had been stolen from Honda of Hollywood.

## B.      The *Batson/Wheeler* Motions

The venire panel consisted of 40 prospective jurors. The trial court, prosecutor, and defense counsel conducted voir dire of the entire panel.

Juror No. 5 stated that she was a paralegal working in the area of civil employment law. She indicated that she had three adult sons who worked for the Los Angeles Unified School District and for a trucking company. She had served on one previous civil jury which returned a verdict. She also stated that she understood and was "okay" with applying the reasonable doubt standard.

Juror No. 7[2] had served as a juror in a criminal case in which a verdict was reached. Although he had been arrested for driving under the influence 25 years ago, he stated that experience would not cause him to favor one side over the other. In response to questioning from defense counsel, he stated that the high burden of proof in a criminal case meant, "You have to

_____

[2] Juror No. 7 originally was identified as Juror No. 15, and subsequently was seated as Juror No. 7.

have a lot of evidence." Juror No. 7 expressed concern that his employer did not pay for jury service. The court explained that jury duty caused a financial impact for many jurors, at which point Juror No. 7 interrupted the court. The court then instructed Juror No. 7 "to be patient, and let's see where we end up."

The prosecutor exercised four peremptory challenges excusing Jurors No. 5 and No. 7, who were two of "three or four" African-Americans in the venire. Smith's counsel raised a *Batson/Wheeler* objection to the prosecutor's excusal of Jurors No. 5 and No. 7. This prompted the following exchange during a sidebar conference:

"[Defense Counsel]: I am having an issue with the last two peremptories exercised by [the prosecutor]. My client is African-American, and I have a problem with that because I think there's [a] very small handful on this entire panel, only three or four.

"The Court: [Prosecutor]?

"[Prosecutor]: *Batson-Wheeler* motion?

"The Court: It's a *Batson-Wheeler*.

"[Prosecutor]: You want to hear the reasons for why?

"The Court: I do. The record should reflect that Juror No. 5 who was excused was [B]lack, and Juror No. 7, the prior peremptory, is a [B]lack male.

"[Prosecutor]: Juror No. 7, the reason that I have . . .

"The Court: Excused him is?

"[Prosecutor]: There's a few reasons. 1, he had a prior DUI. No. 2, he said that—he said the words the People have to have a lot of evidence, that the People have to have a lot of evidence. And at one point he interrupted you, your honor, and he was arguing about the fact that he was not going to get paid.

5

He said today that he didn't want to be here.  He also said that he has a really bad financial situation.

"The Court:  He did.

"[Prosecutor]:  For those reasons, the People exercised their peremptory.

"The Court:  Okay.  And for the [B]lack female?  [Juror No. 5]

"[Prosecutor]:  For the [B]lack female, she was a civil paralegal in employment law, and that's the main reason.  I didn't want to have a civil paralegal on my jury.  I can see my notes.

"The Court:  Are you claiming because of her knowledge in the law?

"[Prosecutor]:  Not because of her knowledge.  I just felt that she may confuse issues with her civil background versus criminal background.

"The Court:  Okay.  The [c]ourt is satisfied that this is not a prima facie showing for [a *Batson*/*Wheeler* challenge] because the [c]ourt does make notes of Juror No. 7, a [B]lack male that was excused and his reluctance to serve because of his financial concerns.  And I did indicate to him that I have taken note of his financial concerns, so you do have a rational[e] for the peremptory on the [B]lack male.  With regard to the *Batson*/*Wheeler* [challenge], I don't find a prima facie showing.  Let's go forward."

## DISCUSSION

### A.  The *Batson/Wheeler* Motion

Smith argues the trial court erred in denying his *Batson*/*Wheeler* motion because the prosecutor did not provide a

reasonable explanation for excusing Juror No. 5 (the paralegal).[3] He also contends the trial court erred by failing to make a finding that the prosecutor's proffered reasons were genuine. We disagree.

The prosecutor's explanations for dismissing Juror No. 5 were reasonable and race-neutral on their face. Although the trial court failed to make a specific finding of the genuineness of the prosecutor's reasons, our review of the challenge to Juror No. 5 does not support Smith's claim of purposeful discrimination.

1.     *Standard of Review and Governing Law*

"Both the state and federal Constitutions prohibit the use of peremptory strikes to remove prospective jurors on the basis of group bias. [Citations.] The now familiar *Batson/Wheeler* inquiry consists of three distinct steps. First, the opponent of the strike must make out a prima face case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose in the exercise of peremptory challenges. Second, if the prima facie case has been made, the burden shifts to the proponent of the strike to explain adequately the basis for excusing the juror by offering permissible, nondiscriminatory justifications. Third, if the party has offered a nondiscriminatory reason, the trial court must decide whether the opponent of the strike has proved the ultimate question of purposeful discrimination. [Citation.]" (*People v. Scott* (2015) 61 Cal.4th 363, 383.)

---

[3] Smith does not contest the trial court's ruling as to Juror No. 7.

7

" 'Review of a trial court's denial of a [*Batson/Wheeler*] motion is deferential, examining only whether substantial evidence supports its conclusions. [Citation.] "We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges ' "with great restraint." ' [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses. . . ." ' [Citations.]" (*People v. Miles* (2020) 9 Cal.5th 513, 539.) In proving purposeful discrimination, " '[t]he defendant has the ultimate burden of persuasion. [Citation.]' " (*People v. Hardy* (2018) 5 Cal.5th 56, 75-76 (*Hardy*).)

2. *Substantial Evidence Supports the Trial Court's Denial of Smith's* Batson/Wheeler *Motion*

The trial court asked the prosecutor to state his reasons for excusing Juror No. 5 before ruling on the first stage in the *Batson/Wheeler* analysis. Where the trial court "finds no prima facie case, but does so only *after* the prosecutor has stated his or her reasons for the challenges, ' "we infer an 'implied prima facie finding' of discrimination and proceed directly to review of the ultimate question of purposeful discrimination." ' [Citation.]" (*People v. Bryant* (2019) 40 Cal.App.5th 525, 536, quoting *Hardy, supra,* 5 Cal.5th at p. 76.) "Accordingly, 'we must determine whether the trial court correctly ruled that the defense did not demonstrate discriminatory purpose at the third stage.' " (*Hardy, supra*, at p. 76.)

The prosecutor's explanation for a strike " 'does not have to support a challenge for cause, and even a trivial reason, if genuine and race neutral, is sufficient.' " (*Hardy, supra,* 5

8

Cal.5th at p. 76.)  Our review " 'is focused on whether the proffered neutral reasons are subjectively *genuine*, not on how objectively reasonable they are.  The reasons need only be sincere and nondiscriminatory.' " (*Ibid.*)

Smith argues the prosecutor's explanation for excusing Juror No. 5 was not neutral.  He complains the prosecutor gave a very brief explanation, limited to stating that she was a civil paralegal in employment law.

Contrary to Smith's assertion, the prosecutor also indicated he was concerned Juror No. 5 might "confuse issues with her civil background versus criminal background."  "[A] close and pervasive connection to lawyers and the judicial system is a legitimate and recognized reason for a prosecutor to exercise a peremptory challenge." (*Hardy*, *supra*, 5 Cal.5th at p. 81.) Accordingly, the prosecutor's stated reason for excusing Juror No. 5 is reasonable and race-neutral.  (See also *People v. Clark* (2011) 52 Cal.4th 856, 907 [finding a challenge to a prospective juror because she was an administrative law judge was a legitimate race-neutral reason]; *People v. Reynoso* (2003) 31 Cal.4th 903, 925 [a prosecutor may "challenge a potential juror whose occupation, in the prosecutor's subjective estimation, would not render him or her the best type of juror to sit on the case for which the jury is being selected"].)

Smith faults the trial court for failing to make a specific finding that the prosecutor's reason for excusing Juror No. 5 was genuine.  Where, as here, " ' "the prosecutor's stated reasons are both inherently plausible and supported by the record, the trial court need not question the prosecutor or make detailed findings." ' " (*Hardy*, *supra*, 5 Cal.5th at p. 76; see also *People v. Reynoso*, *supra*, 31 Cal.4th at p. 919 ["the trial court is not

required to make specific or detailed comments for the record to justify every instance in which a prosecutor's race-neutral reason for exercising a peremptory challenge is being accepted by the court as genuine"].) "Some neutral reasons for a challenge are sufficiently self-evident, if honestly held, such that they require little additional explication." (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1171.)

Smith asserts in a conclusory fashion that "simply because [Juror No. 5] is in civil law is not a viable reason as she specifically stated on the record that she understood the criminal burden of proof and would not confuse the issues." This concern, however, is relevant to a challenge for cause, not a peremptory challenge. (*People v. Bryant, supra,* 40 Cal.App.5th at pp. 537-538.) Merely because Juror No. 5 stated she understood civil versus criminal legal standards did not compel the prosecutor to accept her assurance.

The prosecutor's stated reason for excusing Juror No. 5 due to her occupation was supported by the record and inherently plausible. (See *Hardy, supra*, 5 Cal.5th at p. 84 [finding the excusal of a non-lawyer supervisor of a litigation department at a large corporation was reasonable given the prospective juror's close connection to the legal field].) The reason was sufficiently self-evident that a detailed finding by the trial court was not necessary. Nothing in the record supports Smith's contention that the prosecutor's stated reason was pretextual. Therefore, we conclude that substantial evidence supports the trial court's denial of Smith's *Batson/Wheeler* motion.

10

**B.    Sufficient Evidence Supports Smith's Conviction for Attempted Robbery**

Smith argues there was insufficient evidence to support his conviction for attempted robbery because the prosecution failed to establish that the victim feared him, which he contends is a required element of the charged crime.

"Robbery is 'the taking of personal property of some value, however slight, from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property.' [Citation.]" (*People v. Jackson* (2016) 1 Cal.5th 269, 343.)  "[N]either a completed theft [citation] nor a completed assault [citation], is required for attempted robbery." (*People v. Medina* (2007) 41 Cal.4th 685, 694.)  The only two elements of any attempted crime are "a specific intent to commit [the crime] and a direct, [but] ineffectual act [done] toward its commission." (*Ibid*.)  The direct but ineffectual act must go beyond mere preparation but need not be an actual element of the crime attempted.  (*Ibid*.)

"It is true that an element of force or fear must be proved in order to establish a conviction for robbery under . . . section 211. It is not necessary, however, for this element to be reflected in the overt act of an attempted robbery if the crime has not progressed to that point." (*People v. Vizcarra* (1980) 110 Cal.App.3d 858, 862.)  Therefore, Smith's argument fails as a matter of law because the crime of attempted robbery does not require proof the defendant put the victim in a state of fear.

Insofar as Smith's reply brief raises a more expansive challenge to the sufficiency of the evidence supporting his conviction for attempted robbery, we would reject it as well. There he argues the conduct of waiting outside the shop, refusing

11

to give his name, and then acting in a manner inside of the office that made Yeghikian believe that he had a gun is, at best, the actions of "someone preparing to commit a simple theft, not a robbery."

As an initial matter, we observe that " '[p]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1232.)

Even were we to consider Smith's argument on the merits, however, we would reject it. In a challenge to the sufficiency of the evidence, we review the trial record to determine whether a reasonable trier of fact could have found proof of guilt beyond a reasonable doubt. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) When making this determination, we are not authorized to decide " 'whether [we] believe[ ] that the evidence at the trial established guilt beyond a reasonable doubt.' " (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 61 L.Ed.2d 560].) Rather, we must consider the evidence in the light most favorable to the prosecution, and must presume the trier of fact resolved conflicting evidence in favor of the prosecution. (*People v. Lee* (2011) 51 Cal.4th 620, 632.)

The record shows that Smith parked outside Yeghikian's auto body repair shop in a stolen car and waited two hours. During that time, Smith had the opportunity to observe Yeghikian move a Rolls Royce into the street and place the keys in his pocket. After Smith asked for the keys to the Rolls Royce, he refused to provide his name to Yeghikian. Despite Yeghikian's attempt to calm Smith, Smith told Yeghikian "don't play dumb with me, don't think I'm stupid, you know what I want." Smith then put his hand in his shirt or jacket, signaling to Yeghikian

12

that Smith had a gun.  Based on these facts, a reasonable trier of fact could find beyond a reasonable doubt that Smith committed the crime of attempted robbery.  (See, e.g., *People v. Vizcarra, supra*, 110 Cal.App.3d at p. 861 [finding sufficient evidence to support an attempted robbery conviction where the defendant approached a liquor store with a rifle, and hid on an adjacent pathway until he was seen by a customer and then left]; see also *People v. Sanchez* (2016) 63 Cal.4th 411, 470 [in the penalty phase of a death penalty case, finding sufficient evidence to support the jury's consideration of the defendant's prior commission of an attempted robbery, where the defendant and four other men arrived at a coffee shop armed, positioned their car to make a quick getaway, momentarily entered the coffee shop but then went back outside where they lingered until the owner called the police].)

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED


FEDERMAN, J.[*]


We concur:



ROTHSCHILD, P. J.          CHANEY, J.
_____

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.